IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF WILLIE REYNOLDS, by and through its administrator TAMIKA REYNOLDS, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 3:17cv864-SRW |
| THE PROCTOR & GAMBLE DISTRIBUTING, LLC, et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on plaintiff's motion to remand (Doc. 9) and motion for leave to file amended complaint (Doc. 15), which are opposed by defendants The Proctor & Gamble Distributing LLC, The Proctor & Gamble Manufacturing Company, and The Proctor and Gamble Company ("the Proctor & Gamble defendants"). This case was initially assigned to the undersigned as presiding judge, and the parties thereafter consented in writing to the exercise of final dispositive jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(a). (Docs. 23, 24, 25). The motion to remand and motion for leave to file amended complaint have been briefed and taken under submission without oral argument. For the reasons stated herein, the plaintiff's motion to remand is due to be denied; however, the plaintiff's motion for leave to file amended complaint is due to be granted, which will result in remand of this case.

## I. Background and facts[1]

Plaintiff initiated this suit on November 20, 2017 by filing a complaint in the Circuit Court of Macon County, Georgia. (Doc. 2-1). Plaintiff is the personal representative of the Estate of Willie Reynolds. (*Id.*). Plaintiff's complaint alleges, *inter alia*, that the Proctor & Gamble defendants design, develop, test, manufacture, package, label, distribute, and sell Tide Pods and Gain Flings, which are "single-use laundry packets designed to be used in domestic washing machines" that contain "highly concentrated ingredients which can be lethal if ingested." (*Id.* at ¶¶ 14-15). Plaintiff alleges that "[s]ince 2012, it is estimated that more than 20,000 humans have been injured by mistakenly ingesting single-dose laundry packets"; that "[t]he products resemble candy and are aesthetically appealing to humans with less than full mental capacity"; and that "Willie Reynolds, who lacked full mental capacity, died as the result of ingesting one or more Gain Flings purchased by Tamika Reynolds from Roses [Express] in Tuskegee, Alabama." (*Id.* at ¶¶ 15-16, 20).

According to the complaint, "P&G continues to manufacture, market, and distribute," and "Variety Wholesalers continue to sell[,] these potentially deadly candy-like products" despite having knowledge of injuries and deaths caused by single-dose laundry packets. (*Id.* at ¶¶ 16-18). Plaintiff alleges that Gain Flings are "defective in their design, formulation, and packaging" and "ha[ve] inadequate warnings." (*Id.* at ¶¶ 23-24). Plaintiff further alleges that defendants had a duty to remove Gain Flings from the

---

[1] These are facts only for the purposes of the court's ruling on the pending motion to remand and motion for leave to file amended complaint. They are gleaned from the notice of removal (Doc. 2) and exhibits thereto, the motion to remand (Doc. 9), the brief in opposition to the motion to remand (Doc. 13), the brief in support of the motion to remand (Doc. 14) and exhibits thereto, the motion for leave to file amended complaint and proposed amended complaint (Doc. 15), and the brief in opposition to the motion for leave to file an amended complaint (Doc. 21).

marketplace, that defendants breached that duty by making a conscious decision to continue selling Gain Flings, and that "[t]he combined negligence and/or wantonness of all [d]efendants combined to cause the death of Willie Reynolds." (*Id.* at ¶¶ 28-30, 40).

The Proctor & Gamble defendants answered plaintiff's complaint on December 20, 2017. (Doc. 2-2). Defendant Variety Wholesalers, Inc. answered plaintiff's complaint on December 20, 2017. (Doc. 2-3). Defendant Variety Stores, Inc. d/b/a Roses Express answered plaintiff's complaint on December 21, 2017. (Doc. 2-4). Defendant Vera Gardner answered plaintiff's complaint on December 21, 2017. (Doc. 2-5). On December 26, 2017, 30 days after the complaint and summons was served on the last defendant, the Proctor & Gamble defendants filed their notice of removal (Doc. 2), and Variety Wholesalers, Inc., Variety Stores, Inc. d/b/a Roses Express and Vera Gardner consented to removal. (Doc. 2-7). Defendants' notice of removal is premised on diversity jurisdiction. (Doc. 2 at 3-4).

**II.     The parties' positions**

In their notice of removal, the Proctor & Gamble defendants argue that despite defendant Vera Gardner's citizenship in Alabama, which would destroy this court's diversity jurisdiction, the case is nevertheless removable because plaintiff fraudulently and improperly joined Gardner in an attempt to defeat diversity and prevent removal of the case to federal court. (Doc. 2 at 3). The Proctor & Gamble defendants argue that Gardner is fraudulently joined because "[p]laintiff cannot possibly recover on the claims asserted against Gardner." (Doc. 2 at 5). In support of their argument, the Proctor & Gamble defendants submit declarations from defendant Vera Gardner (Doc. 2-8), and G. Templeton Blackburn II, the vice president and general counsel for Variety Wholesalers, Inc., (Doc.

2-9), stating that Gardner neither knew of any risks of injury from Gain Flings nor did she have any control or input as to whether they were stocked or sold by Roses Express.

Plaintiff does not dispute the amount in controversy or the timeliness of defendant's removal. (Doc. 9). Plaintiff argues that the case is due to be remanded because the court has neither federal question nor diversity jurisdiction. (*Id.*). Plaintiff maintains that Gardner is a properly joined defendant, that the "[c]omplaint sufficiently alleges claims of negligence and wantonness against Vera Gardner for the product placement decisions she made as an employee at R[oses] [Express]," and that "[d]efendants have not met their heavy burden of establishing fraudulent joinder." (*Id.* at 2-4).

The Proctor & Gamble defendants argue in response to plaintiff's motion to remand that they have satisfied their burden of demonstrating that plaintiff cannot possibly recover against Gardner through the testimonial evidence set forth in the declarations by Gardner and Templeton, and that "[p]laintiff has failed to produce *any evidence* that refutes or contradicts the testimony of Gardner and Blackburn" despite having the opportunity to do so. (Doc. 13 at 3).

Plaintiff's reply to Proctor & Gamble defendants' response contends that "[a]lthough Defendants present alternative facts that would not support a claim against Gardner, the court must resolve all factual disputes in favor of Plaintiff." (Doc. 14 at 2). Plaintiff further maintains that "[d]efendants are prematurely arguing that their set of facts is accurate" and that "viewed in the light most favorable to Plaintiff and accepted as true," the factual allegations in the complaint demonstrate that defendants have not met their burden of proving fraudulent joinder. (Doc. 14 at 4).

Additionally, plaintiff has filed a motion for leave to file an amended complaint which would add Lifestar Response of Alabama, Inc. d/b/a Care Ambulance ("Lifestar"), another non-diverse defendant, to her complaint. (*See* Docs. 15, 15-1). Plaintiff alleges that "[s]ince filing the Complaint and Removal, Plaintiff received a copy of the ambulance report," which "indicates that Lifestar failed to follow Alabama Paramedic Protocols while providing care to Willie Reynolds," and she therefore seeks to amend her complaint to include an Alabama Medical Liability Act Claim against Lifestar. (Doc. 15 ¶¶ 5-6).

In opposing plaintiff's motion for leave to file amended complaint, the Proctor & Gamble defendants argue that "it can be readily inferred that amendment is being sought for one purpose: to destroy diversity jurisdiction and thus prompt remand of this case," and it should therefore be denied. (Doc. 21 at 5).

## III. Legal standards

### A. Fraudulent Joinder

Removal premised on diversity jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity of citizenship. Nevertheless, removal may be permitted if there is a lack of complete diversity on the face of the pleadings if the non-diverse defendant is fraudulently joined. *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998)(citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996)). The Eleventh Circuit has recognized three circumstances in which joinder is deemed fraudulent: (1) when there is no possibility that the plaintiff can prove a cause of action against the non-diverse defendant; (2) when there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a diverse defendant is joined with a non-

diverse defendant as to whom there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *See id.* (citing *Tapscott*, 77 F.3d at 1353; *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983)(superseded by statute on other grounds as stated in *Georgetown Manor Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533(11th Cir. 1993))).

"The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *De Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)(citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1562 (11th Cir. 1989)). And "all that is required to defeat a fraudulent joinder claim is a 'possibility of stating a valid cause of action.'" *Stillwell v. Allstate Ins. Co.*, 663, F.3d 1329, 1333 (11th Cir. 2011)(quoting *Triggs*, 154 F.3d at 1287).

"The proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)," and "[i]n such a proceeding, the district court must resolve all questions of fact … in favor of the plaintiff." *Legg v. Wyeth*, 428 F.3d 1317, 1322-23 (11th Cir. 2005)(quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *Cabalceta*, 883 F.2d at 1561)(internal quotations omitted). However, where defendants submit affidavits that are undisputed by the plaintiff, "the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff's complaint." *Legg*, 428 at 1323. "[T]he plaintiff generally must come forward with some evidence to dispute the sworn statements in the affidavit." *Shannon v. Albertelli Firm, P.C.*, 610 F. App'x 855, 871 (11th Cir. 2015).

In *Legg*, the Eleventh Circuit relied on a previous Fifth Circuit case which explained how disputed questions of fact are resolved where fraudulent joinder is alleged:

> While such a procedure requires that all *disputed* questions of fact be resolved in favor of the nonremoving party, as with a summary judgment motion, in determining diversity the mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts. So also as with a summary judgment motion: We resolve factual controversies in favor of the nonmoving party, but *only* when there is an actual controversy, that is, when *both* parties have submitted *evidence* of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts*.

*Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000)(emphasis in original)(internal citations omitted).

### B.  Post-Removal Joinder

Under 28 U.S.C. § 1441(3), "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). *See also Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862 (11th Cir. 1998). District courts have wide discretion in considering whether to allow joinder of a defendant which would destroy diversity jurisdiction, and such decisions are reviewed under the abuse of discretion standard. *Dever v. Family Dollar Stores of Ga., LLC*, 2018 WL 5778189 *2 (11th Cir. 2018). As recently explained by the Eleventh Circuit:

> Rule 15(a) of the Federal Rules of Civil Procedure provides that courts "should freely give leave" to amend "when justice so requires," and Rule 20 permits joinder of proper parties … a district court must scrutinize more closely an amended pleading that would name a new nondiverse defendant in a removed case because justice requires that the district court also balance the defendant's interests in maintaining the federal forum.

*Id.* at *3 (internal citations omitted). In *Dever*, the Eleventh Circuit adopted a test from the Fifth Circuit which weighs four factors in deciding whether to permit joinder of a nondiverse defendant after a removal: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for amendment, (3) whether the plaintiff will be significantly injured if amendment is not allowed, and (4) any other factors bearing on the equities. *Id.* (citing *Hensgens v. Deere & Co.*, 883 F.2d 1179, 1182 (5th Cir. 1987)). District courts have "broad discretion in weighing these factors to decide whether to permit or deny an amendment." *Id.* "If the court permits joinder of the nondiverse defendant, it must remand the case to state court. If it declines to allow the joinder, the federal court maintains jurisdiction." *Id.*

IV. **Discussion**

  A. **Fraudulent Joinder**

Plaintiff's complaint alleges that resident defendant Vera Gardner negligently or wantonly allowed Gain Flings to be sold to the Macon County public "when the risk [sic] of the product were known," and that "[a] conscious decision was made to sell" Gain Flings despite such knowledge. (Doc. 2-1 ¶¶ 28-30, 40). The Proctor & Gamble defendants argue that plaintiff cannot possibly recover against Gardner because (1) Gardner is not subject to liability for products liability actions as a mere employee of a retailer that sells the product and, therefore, Gardner did not owe any duty or breach any alleged duty owed to Plaintiff; and (2) Gardner is precluded from being a party-defendant to Plaintiff's product liability action and statutorily immune from liability under Alabama's Innocent Seller Statute. (Doc. 2 at 11). Therefore, the Proctor & Gamble defendants argue, plaintiff can neither

assert a product liability claim against Gardner nor an individual negligence or wantonness claim under Alabama state law. (Doc. 13 at 4-10).

In an affidavit submitted by the Proctor & Gamble defendants with their notice of removal, Gardner avers that she "has no control or decision-making authority over the items or products Roses Express stocks on its shelves and sells to customers," has "no discretion or authority to compel or prevent the distribution of Gain flings! by Roses or Roses Express Store, including the Tuskegee store," and "was unaware of any potential dangers associated with Gain flings! or any other single-use laundry detergent packet or pod" prior to reading plaintiff's complaint. (Doc. 2-8 ¶¶ 6-8). Templeton's declaration similarly avers that "Vera Gardner has no discretion, input, control authority over, or participation whatsoever in the decision to sell – or refrain from selling – Gain flings! or any other product in the Tuskegee Roses Express inventory." (Doc. 2-9 ¶ 9).

Despite an opportunity – either in the motion to remand or the reply in support of objection to removal and motion to remand – to present evidence contrary to that provided by affiants Gardner or Templeton, plaintiff presents none. Plaintiff cites *Dalraida Properties, Inc. v. Elastikote, LLC*, 2015 WL 4393158 (M.D. Ala. 2015) (citing *Barnes v. General Motors, LLC*, 2014 WL 2999188 (N.D. Ala. 2014)), in support of its argument that there is a possibility of stating a valid cause of action against defendant Gardner. (Doc. 9 at 3-4). However, *Barnes* is distinguishable from the present case. Although, as plaintiff argues, *Barnes* notes that, at the very least, independent wantonness claims are not precluded by Alabama's Innocent Seller Statute, *see Barnes*, 2014 WL 2999188 *4-5, in order to establish wantonness under Alabama law, a plaintiff "must prove that the

defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Norfolk S. Ry. Co. v. Johnson*, 75 So. 3d 624, 645-46 (Ala. 2011)(internal citations omitted). Thus, while the Innocent Seller Statute does not preclude an individual claim against Gardner for negligence or wantonness, "[p]roximate cause is an essential element of both negligence claims and wantonness claims," *id.* at 646, and plaintiff offers no evidence to refute the affiants' claims that Gardner had no knowledge of the danger of Gain Flings, no decision-making ability to remove or retain Gain Flings on sale at Roses Express, and neither intentionally nor consciously acted with indifference. Plaintiff merely asserts that "[p]laintiff's complaint alleges sufficient facts to support claims of negligence and wantonness against Gardner." (Doc. 14 at 3). As in *Legg*, where the Eleventh Circuit found that plaintiffs had not presented any evidence that the defendant knew or should have known about the risks of a product, and could not reasonably be found to have breached a duty, there is no reasonable basis here to conclude that Gardner – an employee with no decision-making authority concerning product selection and no knowledge of the risks of Gain Flings – had knowledge or a duty sufficient to give rise to a plausible claim that Gardner is personally liable for injury to plaintiff under either a negligence or wantonness theory. *Legg*, 428 F.3d at 1324-25. Accordingly, plaintiff's motion to remand is due to be denied.

    **B.**    **Post-Removal Joinder**

Plaintiff's motion for leave to file an amended complaint states that Lifestar transported Willie Reynolds to the hospital, and that plaintiff seeks leave to file an amended complaint because an ambulance report received subsequent to the filing of the complaint

and defendant's removal "indicates that Lifestar failed to follow Alabama Paramedic Protocols while providing care to Willie Reynolds." (Doc. 15). Plaintiff's amended complaint further represents that Lifestar is a health-care provider within the meaning of the Alabama Medical Liability Act, and that Lifestar and its employees, agents, and/or servants had a duty to exercise the same reasonable care, skill, and diligence as other similarly situated health care providers, failed to meet the adequate standard of care, and proximately caused the death of Willie Reynolds because it

> (a) failed to secure and transport the known source of poisoning (Gain Flings!);
> (b) failed to contact [the] Poison Control Center;
> (c) failed to provide and/or administer life sustaining medications and treatment;
> (d) failed to follow patient care protocols; and
> (e) failed to properly hire, train, supervise, monitor, and retain staff

(Doc. 15-1 ¶¶ 42-46).

In considering whether to allow Lifestar to be joined, which would result in remand, or to deny plaintiff's motion for leave to file amended complaint, the court applies the *Hensgens* factors as detailed above.

> i. **The circumstances surrounding plaintiff's joinder of Lifestar do not establish that joinder's purpose is to defeat diversity jurisdiction.**

Concerning the first *Hensgens* factor, the Proctor & Gamble defendants argue that "[p]laintiff only moved for leave to add Lifestar as a defendant after this case was removed and after P&G filed its opposition to [p]laintiff's remand motion." (Doc. 21 at 2). Defendants do not dispute plaintiff's claim that she did not receive the ambulance report, upon which she bases her claim against Lifestar, until after the complaint and removal were

filed. (*Id.*) Defendant cites *Smith v. White Consol. Indus.* for the proposition that "[s]everal courts have held that the fact that a plaintiff attempted to add a non-diverse defendant only after the case was removed, even though he knew or should have ascertained the identity of the defendant at an earlier time, strongly indicates that the purpose of the plaintiff's amendment is to defeat federal jurisdiction." *Smith v. White Consol. Indus*, 229 F. Supp. 2d 1275, 1280 (N.D. Ala. 2002). However, unlike in *Smith*, where the additional defendant whom plaintiff sought to add was clearly known to plaintiff and implicated by the claims before the case was removed, here plaintiff seeks to add Lifestar to its complaint due to new information which underlies new claims against Lifestar arising out of the same transaction or occurrence as its existing claims. *See Teague v. Gas Fired Prods.*, 2016 WL 7373732 at *2 (N.D. Ala. 2016)(Plaintiffs permitted to add claims where "the discovery process produced other theories of liability."). Thus, the first *Hensgens* factor weighs in favor of amendment.

    **ii.**  **Plaintiff was not dilatory in seeking to add Lifestar as a co-defendant.**

With respect to the second *Hensgens* factor, the Proctor & Gamble defendants argue that "[p]laintiff knew or should have known the predicate facts when it filed the original complaint in November 2017, including the identity of the putative new defendant Lifestar." (Doc. 21 at 4). As discussed above, although plaintiff may have been aware of the identity of Lifestar, there is no indication that plaintiff had any reason to believe that Lifestar played any part in Willie Reynolds' death until the ambulance report was received. The court finds that plaintiff has not been dilatory in seeking amendment; it filed its

amended complaint joining Lifestar within four months after filing its initial complaint in state court, and three months after the case was removed from state court. *See, e.g., Lawson v. Wal-Mart Stores East L.P*, 2018 WL 684839 *4 (N.D. Ala. 2018)(finding plaintiff not dilatory where amended complaint was filed within 6 months of initial complaint); *Teague*, 2016 WL 7373732 *1 (finding plaintiffs not dilatory where amended complaint was filed 8 months after initial complaint). Thus, the second factor also weighs in favor of amendment.

### iii. The expense and time associated with pursuing parallel litigation in state court pose a significant risk to plaintiff's ability to litigate her claims fully.

In analyzing the third *Hensgens* factor, "courts generally attempt to determine whether a plaintiff can be afforded complete relief in the absence of the amendment." *Holiday Isle, LLC v Clarion Mortg. Capital, Inc.*, 2008 WL 1756369 *3 (S.D. Ala. 2008)(citing *Jones v. Rent-A-Center E., Inc.*, 356 F. Supp. 2d 1273, 1277 (M.D. Ala. 2005); *Bevels v. American States Ins. Co.*, 100 F. Supp. 2d 1309, 1314 (N.D. Ga. 1993); *Sexton v. G & K Servs. Inc.*, 51 F. Supp. 2d 1311, 1314 (M.D. Ala. 1999)). Defendant argues that "[t]o the extent that [p]laintiff has a valid claim against Lifestar, Plaintiff can obtain relief in state court." (Doc. 21 at 4). While the court agrees that plaintiff may pursue relief against Lifestar in state court, the "inefficiency of proceeding in parallel forums and the desirability of providing complete relief in one lawsuit, warrant joinder of the non-diverse parties." *Id*. The costs to plaintiff to "incur [] expense and time associated with pursuing a parallel lawsuit in state court" pose a "significant risk of injury to [p]laintiff's litigation interests if he is not permitted to amend." *Smith v. Autauga N. R.R., LLC*, 2017 WL 6060898 *4 (M.D.

Ala. 2017). *See also Jones*, 356 F. Supp. 2d at 1277. Thus, the third *Hensgens* factor favors amendment.

### iv. Efficiency and judicial economy favor granting plaintiff's motion for leave to amend.

The fourth *Hensgens* factor allows the court to consider any other factors which may bear on the equities. While, as stated in *Sexton*, the balance of equities should include consideration of defendants' right to choose a federal forum, 51 F. Supp. 2d at 1313, the court also notes that plaintiff initiated this case in state court, initially included a non-diverse defendant, and brings entirely state law claims against defendants. *See Hensgens*, 833 F.2d at 1182 (the interest of a diverse defendant in retaining the federal forum must be weighed against "the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources"); *Smith*, 2017 WL 6060898 at *4 ("While the balance of the equities should include consideration of Defendants' right to choose a federal forum, the court observes that Plaintiff initiated this case in state court and intended from the outset to sue the non-diverse train operator."); *Teague*, 2016 WL 7373732 at *2 ("given that the claims against Agri-South appear to arise out of the same transaction or occurrence as the claims against GFP, the Teagues would likely be unfairly injured if the court denies joinder. Lastly, all of the Counts in the Complaint and Amended Complaint(s) are based upon state, rather than federal, causes of action"). As in *Smith* and *Teague*, this court finds that the interests of efficiency and judicial economy favor litigating plaintiff's state law claims in state court, in a single lawsuit. Thus, the fourth *Hensgens* factor also favors amendment.

Accordingly, the court concludes that under the *Hensgens* factors, the balance of equities favors amendment. Allowing the joinder of Lifestar, a non-diverse defendant, will divest this court of subject matter jurisdiction. Therefore, remand is required. *See Dever*, 2018 WL 5778189 *4; *Hensgens*, 883 F.2d at 1182.

**V.     Conclusion**

For the reasons set forth above, it is

ORDERED that plaintiff's motion to remand is DENIED. It is further

ORDERED that plaintiff's motion for leave to file an amended complaint is GRANTED. Plaintiff shall file the proposed amended complaint on or before **Monday, November 26, 2018**.[2] It is further

ORDERED that upon plaintiff's filing of the amended complaint, the Clerk of Court is DIRECTED to REMAND this case to the Circuit Court of Macon County, Alabama.

Done, on this the 20th day of November, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge

---

[2] Pursuant to the court's administrative procedures governing electronic filing and service of documents, once leave to file a pleading is granted, "the attorney must file electronically an exact duplicate of the attachment."